Sinnott, Judge,
delivered the opinion of the court:
The plaintiff seeks to recover $29,997.36, with interest, paid as excess-profits tax for the year 1917, on the ground that the Commissioner of Internal Revenue refused to allow a deduction of $127,658.31 represented as a loss sustained by plaintiff in its transactions with one of its subsidiary companies.
As we view it, the sole question in the case is whether it is proper to eliminate intercompany transactions among affili *85 ated corporations in determining the excess-profits tax for the calendar year 1917 under the provisions of Title II of the revenue act of October 3, 1917, 40 Stat. 302, and section 1331 of the revenue act of November 23, 1921, 42 Stat. 319.
On May 24,1912, the plaintiff organized a company known as the “Airyknit Company,” which name was later changed to “ Unitee Knitwear Company,” with a capital stock of $100,000. The plaintiff transferred to the newly organized company its patent rights in a special mesh-knitting machine, which had cost plaintiff $50,000, and plaintiff received therefor $50,000 par value of the capital stock of the new company. Thereafter capital stock of the new company was acquired by the plaintiff in the par value of $20,000, for cash; also goods and merchandise were transferred to the new company and paid for by the transfer of $30,000 of its capital stock at par. In this manner the plaintiff between August 3, 1912, and December 31, 1912, became the owner of all the capital stock of the Unitee Knitwear Company.
While it was not so stipulated, both the plaintiff and the Unitee Knitwear Company engaged in the manufacture of knit underwear. This is shown by plaintiff’s consolidated income-tax return for the year 1917, and by the testimony •of Henry Fischer, bookkeeper of plaintiff.
In June, 1915, the board of directors of the Unitee Knitwear Company resolved that the company should go into liquidation. As a result thereof the company wound up its business and affairs during the month of December, 1917.
During the year 1917 the Unitee Knitwear Company manufactured no products; incurred no expenses or liabilities ; had no receipts, except $821.06 from transactions prior to this year; made no disbursements, except $10.21 in payment of debts incurred prior to this year; and no sales of property or service were made, except to the plaintiff.
On January 1, 1917, there was due the plaintiff on open account from the Unitee Knitwear Company $56,015.30. Between March 7,1917, and December 24, 1917, this account was reduced by transfer of property of the Unitee Knitwear Company to plaintiff and payments in cash, as set forth in Finding IX, leaving a balance due the plaintiff ■as of December 31, 1917, of $27,616.36 due on the open ac *86 count, and $100,000 on account of the stock of the Unitee Knitwear Company.
On or about April 1, 1918, the plaintiff duly filed its income and profits tax returns for the year 1917, claiming certain deductions, and paid the taxes therein disclosed. Further taxes were paid and adjustments of the taxpayer’s accounts were made.
On January 10,1924, the plaintiff filed a claim for refund in regard to its 1917 taxes, upon the ground, among others, that the Commissioner of Internal Revenue had failed to allow as a loss its investment of $100,000 in the stock of the Unitee Knitwear Company, and the unpaid balance on the open account, amounting to $27,623.27, as a deduction for the year 1917, both for income and excess-profits tax purposes.
Upon the audit of the plaintiff’s income-tax return for 1917, in connection with the January 10, 1924, claim for refund, the Commissioner of Internal Revenue allowed the sum of $127,658.31 as a deduction on account of the loss sustained by the plaintiff in its transactions with the Unitee Knitwear Company. However, in the audit of the plaintiff’s consolidated-profits tax return for 1917 the Commissioner of Internal Revenue disallowed the deduction of said sum for excess-profits tax purposes on the ground that such deduction could only be allowed for normal tax purposes and could not be considered in determining the excess-profits tax of the consolidation.
We think that the Commissioner of Internal Revenue was correct in disallowing the sum of $127,658.31 as a deduction, with reference to plaintiff’s excess-profits tax, on account of the loss sustained by plaintiff in its transaction with its subsidiary and affiliated company, the Unitee Knitwear Company.
Plaintiff’s excess-profits tax for the year 1917 became due under Title II, of the revenue act of October 8, 1917, 40 Stat. 302. Section 1331 of the revenue act of 1921, 42 Stat. 319, requires consolidated returns, under said Title II of the revenue act of 1917, for affiliated corporations.
The following are the pertinent provisions of said section 1331:
*87 “ CONSOLIDATED RETURNS EOR TEAR 1917
“ Sec. 1331. (a) That Title II of the revenue act of 1917 shall be construed to impose the taxes therein mentioned upon the basis of consolidated returns of net income and invested capital in the case of domestic corporations and domestic partnerships that were affiliated during the calendar year 1917.
“(b) For the purpose of this section a corporation or partnership was affiliated with one or more corporations or partnerships (1) when such corporation or partnership owned directly or controlled through closely affiliated interests or by a nominee or nominees all or substantially all the stock of the other or others, or (2) when substantially all the stock of two or more corporations or the business of two or more partnerships was owned by the same interests: Provided, That such corporations or partnerships were engaged in the same or a closely related business, * * *.
“(c) The provisions of this section are declaratory of the provisions of Title II of the revenue act of 1917.”
The plaintiff and its subsidiary, the Unitee Knitwear Company, were clearly affiliated, under the terms of said section 1331. The plaintiff owned all the stock of the subsidiary company. Both companies were engaged in the same business, namely, the manufacture of knit underwear.
We can not agree with the contention of plaintiff that the fact that the subsidiary company in 1917 manufactured no products, incurred no expenses or liabilities, that its sole activities were to collect certain accounts and to pay certain debts, to wind up its affairs, and to turn over to plaintiff all its property, in any way relieves plaintiff and its subsidiary from the provisions of section 1331, above quoted.' The relations between plaintiff and the Unitee Knitwear Company continued, and they were a unit, until the latter company was finally liquidated in December, 1917.
It would be an extremely technical' evasion of the purpose of the statute to hold that a conceded affiliation ceases when the subsidiary ceases to sell and manufacture goods, while at the same time the parent company owns all the stock of the subsidiary, and the subsidiary continues in business for the purpose of winding up its affairs, turning over its property to the parent, collecting its accounts, and paying *88 its debts, which very debts and accounts arose out of the knitwear business in which both the parent company and the subsidiary were engaged.
The commissioner was correct in refusing to consider the intercompany transactions between plaintiff and its subsidiary, with reference to‘the excess-profits tax. The very purpose of section 1331 of the revenue act of 1921, supra, was to treat affiliated corporations as an entity, or a business unit, and to eliminate intercompany transactions.
This purpose is well stated in Senate Eeport No. 617, 65th Cong., 3d sess., pp. 8, 9, in explaining section 240 of the revenue act of 1918, 40 Stat. 1081, as follows:
“ Provision has been made in section 240 for a consolidated return, in the case of affiliated corporations, for purposes both ox income and profits taxes. A year’s trial of the consolidated return under the existing law (referring to articles 77 and 78 of Regulations 41, wherein the Commissioner of Internal Revenue may require affiliated corporations to file consolidated returns for the purpose of computing their excess-profits tax liability for the taxable year 1917) demonstrated the advisability of conferring upon the commissioner explicit authority to require such returns.
“ So far as its immediate effect is concerned, consolidation increases the tax in some cases and reduces it in other cases, but its general and permanent effect is to prevent evasion which can not he successfully blocked in any other way. Among affiliated corporations it frequently happens that the accepted intercompany accounting assigns too much income or invested capital to company A and not enough to company B. This may make the total tax for the corporation too much or too little. If the former, the compan;/' hastens to change its accounting method; if the latter, there is every inducement to retain the old accounting procedure, which benefits the affiliated interests, even though such procedure was not originally adopted for the xiurpose of evading taxation. As a general rule, therefore, improper arrangements which increase the tax will be discontinued, while those which reduce the tax will be retained.
“ Moreover, a law which contains no requirement for consolidation puts an almost irresistible premium on a segregation or a separate incorporation of activities which would normally be carried on as branches of one concern. Increas *89 ing evidence has come to light demonstrating that the possibilities of evading taxation in these and allied ways are becoming familiar to the taxpayers of the country. While the committee is convinced that the consolidated return tends to conserve, not to reduce, the revenue, the committee recommends its adoption not 'primarily because it operates to prevent evasion of taxes or because of its effect upon the revenue, but because the principle of taxing as a business wmt what in reality is a business unit is sound and equitable and convenient both to the taxpayer cmdt to the Government ” (Italics ours.)
In Appeal of H. S. Crocker Co., 5 B. T. A. 537; Appeal of Farmers Deposit National Bank and Affiliated Banks, 5 B. T. A. 520; and United Drug Company v. Nichols, 21 Fed. (2d) 160, it was held that the Commissioner of Internal Revenue could not tax as income the gain on intercompany transactions. Also, in Mackechine Bread Company v. Commissioner, 5 B. T. A. 883; Appeal of United States Trust Company, 1 B. T. A. 901; Appeal of Thomas Publishing Company, 3 B. T. A. 686, the Commissioner of Internal Revenue was sustained in disallowing intercompany losses. On the general proposition that intercompany transactions should be eliminated in computing consolidated net income and consolidated invested capital, see:
Buffalo Forge Company et al v. Commissioner, 5 B. T. A. 947.
Appeal of Hartford & Connecticut Railroad Co., 2 B. T. A. 211.
Appeal of Gould Coupler Company, 5 B. T. A. 499, 517-519.
Gulf Oil Corporation v. Lewellyn, 248 U. S. 71.
We are of the opinion that the plaintiff and the Unitee Knitwear Company were affiliated in the year 1917, and that the commissioner was correct in refusing to deduct the inter-company loss of plaintiff in the sum of $127,658.31, and that plaintiff’s petition should be dismissed. It is so ordered and adjudged.
GkeeN, Judge; Moss, Judge; Geaham, Judge; and Booth, Chief Justice, concur.